————o————

5079.

(Court of Appeal, Parish of Orleans).

## LOUISVILLE & NASHVILLE RAILROAD vs. THE RIGOLETS CLUB.

1. Proof of disturbance is essential to plaintiff's recovery in a possessory action.
2. Possession of a part of a tract of land physically occupied by plaintiff is not disturbed by acts of trespass committed in other parts of the tract not thus physically possessed.
3. The mere fact that one takes possession of property that he is advised belongs to another, will not make him a tenant or precarious possessor under the other; but, on the contrary, as a presumption of ownership flows from possession, he will be presumed to hold adversely or in his own right.
4. Corporal possession of a part under a permit to occupy the whole, accompanied by acts manifesting a clear intention to possess to the full extent of the permit, will confer a possession of the whole.

Appeal from the Civil District Court, Division "A."

Denegre, Blair & Chaffe, for plaintiff and appellant.

Hall & Monroe, for defendant and appellee.

GODCHAUX, J.—In this purely possessory action instituted on January 4, 1908, the plaintiff, claiming to

have possessed as owner for a long period, a tract of land comprised principally of swamp and marsh, prays to be restored to the possession of a ''part'' thereof, in the enjoyment of which it claims it was disturbed, ''on or about May 16, 1907,'' by the acts of defendant, pretending to be the owner, said acts consisting of ''digging a ditch thereon and placing wooden signs thereon.''

After pleading the general issue, the answer, filed on January 8, 1908, denies plaintiff's possession of any part of the tract except that occupied by plaintiff's railroad embankment and tracks which traverse same; asserts possession of the property in defendant and its authors, as owners, since 1854, and prays for the dismissal of plaintiff's action and the quieting of defendant in the possession of the property.

Plaintiff appeals from a judgment dismissing his suit but quieting defendant in the possession of certain parts of the property hereinafter noted; and defendant has neither appealed nor answered the appeal.

I.

The Code of Practice provides that in order to be entitled to bring a possessory action a plaintiff should have had the real and actual possession of the property, as owner, usufructuary, or as the possessor of a real right therein, at the instance when the distrubance occurred, and for more than a year prior thereto.

Actual occupancy and detention of the tract of land at the time of and for more than a year prior to the disturbance admittedly existed in plaintiff to the following extent, to-wit:

1. That part upon which its railroad embankment and tracks, as well as its station-house, tool-houses, etc., were located.

2. Several small, separate portions, scattered along

or near the line of its railroad embankment, actually occupied by third persons to whom the plaintiff had granted leases from time to time, and who consequently held under and for account of plaintiff.

There is one valid objection, sufficient in itself, against awarding plaintiff judgment quieting it in possession of the foregoing portions, admittedly in its possession, and it consists in the fact that it has failed to prove that it has been disturbed in its possession thereof.

The acts of disturbance complained of in the petition, that is, the posting of signs and the digging of a ditch in portions of the open marsh adjoining this property, however potent they may have been in effecting a disturbance of plaintiff's possession of other parts of the tract claimed to be its civil and constructive possession, clearly did not and were not intended to accomplish a disturbance, in fact or in law, of plaintiff's possession of that part which it actually detained or physically occupied.

## II.

Passing to a consideration of the case with respect to the entire tract, exclusive of one acre which will be hereafter referred to, and exclusive also of the part heretofore considered, in physical possession of plaintiff, it appears that is consists of open marsh land.

With reference to this open marsh, defendant not only challenges plaintiff's possession, but likewise claims that whatever disturbances on its part of such possession existed transpired more than a year prior to the filing of plaintiff's suit. The lower court upheld both contentions, and consequently plaintiff's claim made on appeal, that this Court cannot consider the plea of prescription because it was not passed upon by the lower court, is not well founded.

The view that we take of the case renders unnecessary

a consideration of whether or not possession in plaintiff existed as to this open marsh, for we are satisfied that a disturbance of plaintiff's possession occurred more than a year prior to the filing of the suit.

It will be noted that plaintiff's petition charges that it was disturbed in its possession of a "part" of the property by the act of defendant, on May 16, 1907, "in digging a ditch thereon and in placing wooden signs thereon." The evidence establishes beyond the peradventure of a doubt that the wooden signs which announced defendant's ownership of the property and forbade all persons from hunting thereon, were located at several points in the marsh, not later than December 1, 1906, that is, more than one year prior to the institution of these proceedings. Plaintiff concedes this to be true but seeks to avoid or lessen the consequence of this finding by claiming that the effect of placing these wooden signs upon the property was to dispossess it, not of the entire marsh, but simply of the particular spots or points where each of these signs were planted. In other words, possession of a "part" of the property, it used the word "part" as covering these infinitesimal points actually occupied by the stakes to which the wooden signs were attached.

That such was not plaintiff's intended meaning may be readily inferred from the petition itself, for, had such an intention existed, plaintiff would not have used the indefinite expression "part" as describing the extent of the disturbance, but would have specifically employed such language as would clearly convey the meaning that that it now attempts to ascribe to the expression actually used.

Moreover, the facts and circumstances surrounding the location of these signs, effectually dispose of such contention, for it appears, that during the summer of 1906, defendant, through its attorney, had been investigating

—105—

the records for the purpose of discovering the true owner-
ship of all the land in controversy here. As a result of
this investigation the attorney reported that the title, to
the land, reposed in the Edgerton heirs, and negotiations
with these heirs resulted, first, in a letter dated Novem-
ber 20, 1906, wherein one of the heirs acting, or assum-
ing to act, on behalf of all, notified the defendant that its
offer of nine hundred dollars for the property was ac-
cepted, and consenting that defendant might go at once
into possession of the property provided five hundred
dollars on account of the purchase price be paid in ad-
vance; and, second, in a formal agreement of sale in
favor of defendant, dated November 21, 1906, covering
the entire tract which is therein fully described, and ex-
ecuted by parties styling themselves as owners of the
property, and as the sole heirs of Edgerton.

It was upon receipt of these documents that the de-
fendant caused these signs to be located upon the prop-
erty, on or about November 26, 1906, and this action was
followed by the employment of a watchman to patrol the
property and to prevent all persons from hunting there-
on.

The record shows satisfactorily, that the plaintiff was
fully apprised at once, not only of the location of the
signs, and the patrolling of the property, but likewise
that the defendant claimed then to have acquired legal
title to the property from third persons. The patrol was
rigidly enforced against plaintiff and the public general-
ly, and it was within the common knowledge of all per-
sons within that locality, prior to January 1, 1907, that
the defendant was claiming title and ownership to the
entire property, and was setting up these pretensions
adversely to plaintiff.

Under these circumstances it is defendant's conten-
tion, that having taken physical possession of a part of
the property under a claim of right, and with the mani-

fest intention to secure and occupy the whole, its possession was in fact that of the whole, and constitutes a disturbance of plaintiff's possession to that extent, namely, to the extent of the whole tract less that in the physical occupancy of the plaintiff.

The principle that possession of part, with an apparent right to the possession of the whole, constitutes possession of the whole, appears to be too well established to require citation of authorities.

While the question of title has no place in a possessory action in so far as their validity is concerned, titles are material in fixing the nature or quality, as well as the extent of the possession which is sought to be established.

That defendant took possession under the pretense of ownership, and not as a trespasser, as alleged in the petition itself, and that possesion which began in the planting of the signs, and which was accompanied by a patrol of the property to the knowledge of and adversely to the plaintiff, must be held to have extended to the full limits of the property which, on November 20, 1906, it was granted a permit to occupy, and as to which, on the day following, the agreement of the sale was executed.

It is true that neither of these documents pretend to rest title in the defendant, but that is of no consequence, for it is not essential to exhibit a deed apparently translative of the fee in the property, in order to establish in one possessing a part of the property, a possession of the whole.

An intention to possess the whole while occupying a part is all that is required, and this intention may be manifested, either by enclosing the whole property, or by being in possession of a part with an apparent right to the whole, or by such other physical acts or circumstances as would clearly evidence an unmistakable intention to adversely and openly possess the whole.

The present case discloses a permit to occupy, an

actual occupancy thereunder accompanied by acts mani-
festing a fixed intention to possess the whole adversely
to plaintiff, and, on the whole exhibit a sufficient taking
of possession of the entire marsh as to warrant a finding,
that plaintiff was disturbed to that extent.

The judgment of the lower court insofar as it rejects
plaintiff's demand, both in respect to the property and
its physical occupancy and in respect to the property
just considered, is approved, and there now remains to
be considered a small section of the property which, on
account of the peculiar contentions with reference there-
to, it was deemed best to separately discuss.

## III.

In 1871, the New Orleans, Mobile & Chattanooga Rail-
road Company, granted to the United States Govern-
ment, a site for a Custom House, consisting of one acre of
land, situated upon a portion of the marsh, this permit
reading in part as follows:

"You can occupy the ground at the point selected
by the officers as above mentioned as long as the
Government desires to use it, for its purpose, free of
charge."

The Custom House was erected under this permit and
used as such for many years when, in 1900, the Govern-
ment sold the building itself to Norton & Buckner who,
in turn, in 1902, sold it to the defendant. The acts or
bills of sale covering these two transactions recited that
the building "is situated on land not the property of the
United States, but, now, or heretofore, owned by the
New Orleans, Mobile & Chattanooga Railroad Company."

The defendant took possession of the building and the
acre of ground upon which it stood and has occupied it
ever since.

The plaintiff, the successor of the New Orleans, Mobile

& Chattanooga Railroad Company, charges with reference to this acre of ground:

1st. That as the defendant from the moment of its occupying the building became a tenant or precarious possessor under plaintiff, and held that status when the posting of signs and the policing of the property took place these acts did not constitute a disturbance, and,

2nd, That, under Revised Civil Code, Article 3512, defendant's status as tenant was not converted into that of adverse claimant until it had done two things, namely, acquire, on January 15, 1907, a formal deed to the property from a third person, and, on May 17, 1907, dig a ditch around the acre of land, thus changing the nature of its possession and notifying plaintiff of such change all within a year prior to the filing of the suit.

The weakness in plaintiff's position in this connection arises in its failure to adduce sufficient facts upon which to base a finding that the defendant became a precarious possessor or tenant when it took possession of the property at the time of its purchase from the Government. There is no presumption of law or of fact that, when one goes upon property which he is advised belongs to another, he thereby becomes a precarious possessor or a tenant at will; on the contrary, it would be more reasonable to presume that he thereupon intended to hold adversely to the owner, unless it is shown that he had secured or sought to secure some sort of permit from the owner. This presumption as to his status being that of an adverse possessor is not destroyed by proof of the fact that the party from whom he purchased the building had a permit to occupy the land, since. 1. This permit is not shown to have been brought to his knowledge, either by record of otherwise, and, 2. Because if it had been brought to his knowledge the conditions of the permit were such as to advise him that by taking possession thereunder he was acting in direct violation of the

owner's wishes, for the permit was conditioned upon the land being used for governmental purposes.

That defendant was a trespasser or claimant in its own right is presumptively established by the proof of the bare fact of its possession, which, under Civil Code, Art. 3488, causes him to be "presumed to have possessed as master and owner, unless it appears that the possession began 'in the name and for another.'"

But plaintiff claims that on two occasions the defendant acknowledged itself to be a tenant at will of the plaintiff. As to the first occasion, it appears that a controversy having arisen as to who should bear the expense of replacing a platform or wooden-way leading from the railroad to this property, the plaintiff took the position that this expense should be borne by the defendant because he was a tenant at will of the property. Whether or not defendant acknowledged or denied this to be its true status, or whether or not this controversy ever came to a head does not appear; but as the record does disclose that plaintiff finally consented to restore the platform or wooden-way at its own expense, it is impossible to eke from these circumstances any acknowledgment whatever on defendant's part.

The second occasion, when plaintiff claims that defendant acknowledged its status to be that of a tenant at will, occurred during the summer and fall of 1906, that is, during the period when the defendant's attorney was seeking to determine the true ownership of the land in controversy. It appears that during this same period the president of the defendant association had tentatively negotiated with plaintiff's representative to secure a formal lease of a portion of the property upon which the former contemplated erecting an enlarged club-house. If the record stopped here there might be some force in claimant's contention that this application for a lease

·constituted an acknowledgment of plaintiff's status as owner of the property, but the transcript discloses that when the defendant applied for this lease, the plaintiff was fully advised that defendant was investigating the title to the property and had applied for and would take the lease only in the event that the true title to the property was located in plaintiff. In this connection the plaintiff charges defendant's officers and attorneys with an attempt to clandestinely secure title to the property, while, at the same time, lulling plaintiff into a sense of security with reference thereto. The record fails wholly to sub·stantiate such a charge, and upon this point we cannot better express our own conclusions than by quoting the following excerpt from the opinion of the lower court upon this point:

"I heard all the witnesses, and my judgment is, that there is not the vestige of unfair dealing, much less of fraud or deception or double dealing on the part of Mr. Blakemore, defendant's president, or of Mr. Monroe, defendant's attorney, or of any member of the defendant club.

"Their position, plainly expressed to the plaintiff's superintendent, Mr. Marshall, was: If your company is the owner and possessor, the defendant club will lease from you. The defendant never said that, if plaintiff should be found to be not the owner, their club would abstain from acquiring the right of the true and real owner."

Inasmuch as defendant had been trespasser and adverse possessor since 1902, it is clear that plaintiff's suit, filed in 1908, was instituted too late to enable it to dispossess defendant of this portion of the property.

This disposes of all of plaintiff's contentions and demands, and there remains for consideration the reconventional demand of defendant which was maintained by the

lower court to the extent of quieting defendant in the possession of all the property exclusive of that physically occupied by the plaintiff's railroad, railroad embankment, and structures, and exclusive also of the several portions held through its tenants.

The views heretofore expressed enable us to dispose of the reconventional demand in a few words, for defendant, as plaintiff in reconvention, has, as heretofore shown, proved possession as owner for more than one year of all of the property, except that physically occupied by plaintiff as aforesaid; has proved a disturbance of its possession within the year, for plaintiff's suit itself is such a disturbance under Article 52 of the Code of Practice, and has consequently established its right to the judgment which it has secured upon the reconventional demand.

It is, therefore, ordered that the judgment of the lower court be affirmed.

December 19, 1910.

Rehearing refused February 20, 1911.

Writ denied by Supreme Court, March 28, 1911.